21 2939 it's Charles Oakley versus James Dolan and it looks like the New York State Trial Lawyers Association will also be arguing. So we'll start with Mr. Wigdor. Did I pronounce that right? Yes you did your honor. Thank you very much. Good morning your honors. May it please the court. My name is Doug Wigdor. When the district court granted summary judgment in this matter dismissing Mr. Oakley's assault and battery claims it did so without analyzing citing or even considering the single most piece of evidence that was before it and that was the stadium video at the joint appendix at 367 specifically at 8 minutes and 16 seconds to 8 minutes and 30 seconds. If the court goes back to the stadium video at 8.16 to 8.30 the district court makes no mention of it and that part of the video shows the initial confrontation between the private security guards of Madison Square Garden and Charles Oakley. You can see the show of force around Mr. Oakley and then the one guard motions to Mr. Oakley to stand up. He does so and then that same guard pushes Mr. Oakley in the chest and then a number of guards... Are you saying that that video is clear? The video that I'm making... That the court did not mention is clear or are you saying is your argument that the videos taken all together are not that clear? The latter your honor at first I would say that the stadium video was was not crystal clear. It is a series of images it's in low quality but the court didn't consider it and considered instead the fan video which is at 369 but the problem is is the fan video does not commence until after 8.30 of the stadium video so the court... Can you clarify something for me because I had the same and I actually just I'm fresh from just re-watching these so the at 8.20 of the stadium video there is something and these are like one second frames or something so it looks like there's some sort of whether you call it push or fall stumble something that happens that is not one of the there's much discussion about the two falls and I was puzzled because it seemed like they were three and the one you're describing is not one of the ones that everybody's talking about because he didn't go all the way down. Yes the one that I'm first talking about is actually the first assault in and it's one that the district court does not mention the district court's analysis of the stadium video stops at 8.16 conveniently and then jumps to the fan video which commences after 8.16 to 8.30 of the stadium video and in that in that 15 or 16 seconds again Mr. Oakley is asked to stand up he's pushed in the desk and he's then held back by a number of guards. The fan video which the court then relies on to conclude that Mr. Oakley was given ample opportunity to leave and that Oakley unilaterally. You are no longer arguing that it makes any difference why Mr. Dolan wanted Mr. Oakley to leave. You're conceding that Dolan had a perfect right to have Mr. Oakley leave and the whether force was used before during or after. I'd agree with that with two caveats your honor. The first caveat is that under Noonan they also were required to give Mr. Oakley a reasonable amount of time to leave and the second caveat again in Noonan Court of Appeals is that you can't use force when getting somebody to leave if the force is being used for punishment or passion and those are the words of the Court of Appeals. So when you look at the pretextual reasons that Dolan initially gave to justify. I have another question which goes to your request for more discovery and that is in at least some of these videos there are pictures of any number of people taking pictures. Are you intending that some of these pictures may have been taken early enough so that they would speak to what was going on? Yes, yes your honor. In fact the District Court itself in its first pre-motion conference said that there probably are different camera angles and testimony of eyewitness accounts of what was seen. You know I've only described the first assault and battery but there as Judge Robinson you mentioned there also were two other assaults and battery namely the court's conclusion that that Charles Oakley tripped and then he lost his footing and with respect to those you know first of all what caused Charles Oakley a former NBA all-star to trip what caused him to lose his footing and of course you could not see below his knees to make those conclusions unless you were drawing inferences in favor of the moving and you know Scott versus Harris is an interesting... The one video, the fan video clearly where he's still on he's still on the risers and he's in the seating area he himself he just goes down quickly that doesn't look like there's no one touching him at that moment in time well I mean there's I mean you can't see any instrumentality of him going down in any way shape or form nor can you see anyone effectuating taking him down but he just goes down quickly. I would disagree with that conclusion and and I'm not to suggest that that's not what you see or what the district court saw but but I believe as do my colleagues that we see something else what we see is somebody holding Mr. Oakley's arm somebody around his waist you don't have... We also see Mr. Oakley strike one of those individuals we and we see Mr. Oakley strike down on that individual that was touching him on the arm and we hear Mr. Oakley speak in a very loud and excited voice profanely. We do see some of that you're right Judge Wesley but that's why... We have to measure the reasonableness of the response of those who have asked him to leave in light of his activity not also don't we ask to whether there's a whether there's an issue of fact as his conduct? Judge that's why I started with what precipitated this entire incident. Well if he was treated poorly there's he doesn't have a justification for striking someone. Well he has it if he is... When someone says to him you need to leave he has justified and they have and whatever initial contact has occurred is no longer going on he's justified in striking. That's not what happened though your honor what happened that is not what respectfully what happened. If I saw that's what happened is he justified in striking that individual. If he if he is given a reasonable period of time to leave. Counsel yes you are arguing that he was struck before this happened. Correct. You are not arguing that if nothing happened before your client was justified to do what he did at that time. Your argument is that there may have been an assault and battery before the time when he was doing that. Precisely. That's the question we have to focus on. Precisely and and and just to dovetail that Judge Calabresi not only is I would agree with what you said but the district court didn't even consider that. The district court went from again 816 to the fan video and to what Judge Wesley is is is now looking at. You need to keep it in the context of what happened before which was a person who was not doing anything unruly. He had his license revoked apparently for no reason and was immediately and that's why at 816 you can see it's immediate. They gave him no reason. That is what you are saying. We don't know what was happening before. It's possible that your client was just as rude and vulgar before as he was after. Your question you're saying is but that's a question of fact that has been ignored. Yes that is true because we don't we don't have any audio of the stadium video and that's that's the only video that shows Mr. Oakley coming down the steps with no problem getting into his seat and and so there's no audio that would say what the security guards are saying or what Mr. Oakley is saying and at the end of the day this is clearly an issue of fact as to whether a there was a reasonable amount of time to give to Mr. Oakley. Counsel it may be an issue of fact or may not ultimately. I mean it may be something that can be decided as a matter of law but what you're saying is it has to be done on the basis of much more information than what the district court did. That is it is possible that if we look at if we got individual pictures by bystanders and looked at what happened before that a court could conclude as a matter of law one way or another but what you're saying is they couldn't conclude it on the basis of what they looked at then. I would certainly agree with the latter part of your statement Judge Calabresi but the former I don't I can't think of any discovery in this case with the exception of Mr. Oakley testifying at his deposition that he wasn't pushed that would bring this case and to the level of warranting dismissal at some rate judgment. If there were a video by a bystander that when somebody came with voice and said Mr. Oakley will you leave and you have Mr. Oakley get up in that video I'm not saying there is one getting up and hitting the guy then it would be decided as a matter of law. You're saying. I'm saying that that's not what happened. Yeah that that is and also what the video that we have now even though the stadium video is not crystal clear it does show the the the guard motioning to Oakley to get up and then immediately there is a push to the chest and and the fallback and. Can I ask a question about the relevance of Mr. Oakley's conduct? Clearly it's relevant in some way but I'm trying to figure out we're not making judgments about whether his conduct was reasonable or unreasonable or excessive or not excessive. Am I right about that? The relevance of his conduct is only what it tells us about the reasonableness of the conduct of the security guards following his conduct. Yes because as the prior panel which Judge Calabresi was on noted this when looking at the Graham factors for take place in a more of a Fourth Amendment police scenario one of the things that you you look at is the severity of the crime or whether there's any exigency and and so I would argue your honor that in this case at least based on what we know we've seen there were there was absolutely no exigency or crime being committed and so the level of force that could be used to effectuate his removal was the bare bare minimum and he should have been given according to noon in a reasonable period of time because he wasn't doing anything that would warrant he didn't have a knife he didn't have a bottle he wasn't threatening a fan as far as we know so he had to be given a reasonable time to leave not a matter of seconds which the video shows he had to be in my view be given minutes many minutes to question what's reasonable with some with some guardrails from from a court would that be a jury question I think it I don't think I don't think a matter of seconds would be any any juror could find a matter of seconds to be reasonable unless that person said unless that person excuse me unless we knew what was said I mean if the exchange was we need you to leave not in your life I'm not moving I mean it might that might be a very quick exchange but that might be enough to warrant escalation to do a physical intervention not as much as somebody who had a knife in their hand or just punched a fan for sure okay do we have I think we're going to hear from you again so thank you for your for your argument mr. cells thank you your honor and may it please the court my name is Derek cells and I'm here on behalf of the New York State trial lawyers arguing as amicus one of the great things about a jury trial is that we have a group of individuals from different backgrounds from different walks of life who have different experiences in life come together review the evidence and collaboratively reach a decision hopefully a fair decision so yes are you arguing that videos are strong enough so that courts can decide a matter is a matter of law or are you arguing that we should be skeptical of videos because by and large they can be interpreted in different ways which of these two are you telling us the latter your honor definitely the latter I think in some cases as we've seen video is strong enough this that the security officers walked up to mr. Oakley slapped him and immediately took him to the floor do you think that court would have been correct in granting summary judgment for the plaintiff or would you be arguing for a jury trial on that issue no I mean so there are instances where the video then does resolve the issue in favor of the proponent of of a yes your honor and I think that's clear from the Scott so this is a question of whether this video does or does not irreducibly did take this to a matter of law as opposed to a matter of fact Senate the case no your honor I think in this case there's so there's certainly a lot of this video creates an issue of fact or not yes and okay but but hold on your honor it's not just the video I'm going well the video does not indicate for example mr. Oakley's feet at the time that he fell to the ground and although your honor indicated I think you are here to make a broader argument and it might as well be said you are here to say that the existence of videos has been used by courts to decide things that are best decided by juries and you are urging us to be skeptical of videos and to say so because videos can be ways in which courts take away from juries what in the particular circumstances should be jury questions there are videos that are clear enough but you're saying don't let that be an excuse for a your honor and I think it's a slippery slope that once you allow courts to take evidence whatever evidence it is that they believe is strong enough to to support their view then you're removing what juries are there to do and that's to have people from different walks of life as I started look at evidence in to collaborate about that evidence and then reach a just conclusion and that's what the jury process is about and as we sit here today and we talked about all the different ways you can look at the video and how you can see it this way you can see it that way is a perfect example of why juries should be doing this and not an individual judge and so and so as yourselves what would the rule be that you would offer since we since we have to say something that then would give guidance to a district court in making a decision as to whether it should or should not tie itself to the video and take take the matter away from a jury and say as a matter of law this was reasonable condom. What do you want us to say? well I would say this this is what I would say I would say well in an instance say never but no no in an instance never is a two-edged sword you know a plaintiff may a plaintiff may self may find themselves injured terribly on that sword. Well in this instance I think what you could what our position is is that when a judge dismisses a case based on the complaint and is reversed and is told that no this complaint makes out a case that the court should then engage in the discovery process and not allow for example no answer. Well but this was this was because the district court suffered from misimpression with regard to what constituted assault. Nonetheless and or the right to remove the individual. But the point is once there is a basis to move forward with a case on whatever claim is allowed there should be discovery full discovery there should be an answer where the defendant is required to at least say I deny these allegations. Notwithstanding a video that clearly refutes the allegations of fact. Well I don't I think if there is I got asking you for a standard. If there is video that can clearly refute the facts and and there's no challenge to. May I be more blunt if the only event was that shown in the last video you know when Mr. Oakley was beating up on the others and swearing at them. If that were the only thing that happened wouldn't the district court be correct in saying that there was no undue force. The claim is that that was down the line and all sorts of things that happened before and it says to those but if it had been just that last video which is the only one which is fairly clear in my judgment I must say wouldn't that justify a decision for the defendant? No it wouldn't your honor not not in a prior to that video. No but I said I began by saying if that was the first thing I agree we have to worry about what happened before but I'm just putting the hypothetical if that were the starting point wouldn't you concede that then the video would rule? I wouldn't concede that your honor no and I think that's that's because when you look at different people's experiences as jurors and you look at what people have gone through in their lives you know whether or not that would be justified not justified I think should be left again to be you know a jury question. We've really got two jury questions right what happened and was it reasonable? Correct. Right and in this case both of them I understand the contention is there's range of what's reasonable a jury ought to be able to decide that. Right that's that's exactly my point your honor. Appreciate your argument. Thank you. Thank you. Mr. Mastro. Thank you your honors. Your honors this case is now morphed into something. I'm sorry speak into the mic. Certainly your honors and I know Judge Calabresi you were on the first panel. This case is now morphed into something completely different from what was argued to the first panel and what was argued below and I go to the complaint. The amended complaint in this case nowhere alleges that the assault in battery involved the very first interaction between Mr. Oakley and the security guard who approached him and told him to leave. The complaint. Isn't it pretty common for there to be a complaint and then in the usual case there's discovery people learn more the facts get developed and there's a summary judgment record in the and the picture may look different and obviously you have to conform to the broad contours of the complaint or amend your complaint but it doesn't strike me as particularly shocking that we're talking about specific moments in the course of conduct that weren't specifically identified in the complaint. Your honor here Charles Oakley should be alleging from inception what he experienced what he alleges and this is in his amended complaint A97 and 98 are two instances of what he claims are assault in battery. One he alleges that he was when he rose and I think Judge Calabresi you were right when he rose those seconds all captured on video captured by the security cam and a YouTube video when he rose it's ambiguous whether they touched at all but he alleges the assault in battery. Isn't it perfectly clear that he is claiming you know you are saying this but isn't it perfectly clear that he is claiming that they started beating up without giving him a chance to leave. Well you're not going to read the complaint in any reasonable way you're not language may be slightly one but if it is not isn't that exactly the sort of thing that an amendment should be allowed. He was he was allowed to amend and what he alleged in his amendment on A98 was that he started to turn and return to his seat and at that point the very point that Judge Wesley pointed out he claims a battery that he was pushed to the ground and forcibly shoved that's his first batter. If that were so then when the prior panel said the issue is not whether he had a right to stay or not that the defendants had a right to kick him out then why wouldn't the first panel have simply decided for the defendant is a matter of law. If what you're saying is so you know why on earth would a panel led by Judge Newman of all people waste the time of everybody by sending it back. Your Honor you didn't have the benefit of the video at the time you didn't have the benefit of the admissions he made on summary judgment. He made the admission on summary judgment. This is a four four three that he did not leave as first directed that instead he turned around to return to his seat refusing to leave and it was at that point that that he first. I hear you but do you concede that if the issue was what happened first not at this latter part if the issue were what happened first then the videos that we have are not clear enough and the presence of other videos by bystanders should be brought in. Well, Your Honor, I concede, I know. Your Honor, I concede only that the videos, both the arena security cam and the YouTube video captured the entire incident and the New York Times video captured it when he first rises. So you have multiple angles, two of which have audio. You haven't answered my question. Are you conceding that if we look at the first instance, which you say he did not claim, that if we look at that, we don't have the kind of clarity that would allow us to decide as a matter of law on the basis of a video. Are you- I do not concede that because you have a video, you actually have two. The security cam and the YouTube video that show the entire incident. So now you're saying that the original video is clear enough and that we don't need any more. I find that a little difficult myself because I've looked at that video. I've looked at the latter video and frankly the latter video, late video, is very clear. But the earlier video left me wondering what was going on. Let me make two points, your honor. The reason why the pleading is important, the admissions he made on summary judgment are important, are because this is totally made up, this new argument, that there was supposedly a battery when he first stood up. The pleading says his first battery occurred exactly where Judge Wesley says, I don't see any forcible shoving to the ground, I don't see any pushing him to the ground. That was his allegation of first battery. I'd like to ask a question. Please. Thank you, I'm sorry to interrupt, but I- No, no, please, but that's my point. My point is- Yes, please, your honor. Thank you. Rather than focusing on the complaint, and maybe I got this wrong, since we're on summary judgment, I focused on the summary judgment rule 56 statements, which to me define the party's position. If you look at Mr. Oakley's declaration, he says he stood up from his seat as he was being surrounded. I didn't lunge at the security guards immediately after I stood up. The security guard, who had initially approached me, pushed me away from him. I was grabbed by some defense security personnel without provocation and pulled backward, at which point I moved my arm in an attempt to escape their grip. It wasn't clear to me, I confess, I thought that description was the description of this so-called first incident, but maybe it was the second incident. I'm not clear, but is that so clear that we can say as a matter of law that the video contradicts his statement in his affidavit? I'm talking about the, it's in exhibit two at 820, I don't know. Your honor, for two reasons, for two reasons. First, he admits in the 56.1 statement, A443, that his first interaction is being directed to leave and that he instead turned to return to his seat, refusing to leave. He admits that, A443, paragraphs five and six of the 56.1 statement. He does not say there, I was assaulted when they first approached me. In his complaint, what he says is, he then rises and he says he was pushed to the ground and forcibly shoved. That's paragraphs 42 and 43, A98 of the record. Your honors, when you look- I'm sorry, you're looking at his responses to your client's rule 56 statement. That is correct, your honor, and I'm looking at his own pleading. So that's different from his declaration at A495, right? I just want to make sure I'm- Yes, yes, but your honor, he's not claiming in the declaration that that first interaction, he describes it as a push, MSG describes it as a lunge. It's not described in their pleading as an assault and battery. That's not the claim of assault and battery. He claims that he got the direction, turned to return to his seat, refused to leave. New York law for 100 years, your honor, has been that when you have a direction to leave and the venue, private venue, can tell you to leave for no reason or any reason. Counsel, that is so and it is no longer in the case. That is what the prior panel held. The prior panel held that Volster Oakley was also making an argument that he had a right to stay unless there was a good reason to kick him out. What we held was no longer New York, you can leave. But that didn't mean that he wasn't also stating in his claim that he was beaten up and not given a chance to leave. And that's the question whether the district court was able to decide. Your honors, once he refuses to leave, as he has admitted he did when he was first approached. Once he refuses to leave. Once he refuses to leave, it doesn't mean, if I say I'm not going to leave, it doesn't mean that somebody can immediately beat me up. They may have to say- You're not off. Nobody's, there's nothing on this video, your honor, that says they beat him up. The question is, is the video clear enough and are there other videos around that might make clear what happened at that point? Your honor, we have produced all videos we have. I swore to it, MSG swore to it, all our internal footage and any other videos we had. He had anything else that's publicly available, he could have done his own investigation and put before the court. Multiple angle videos, I suggest to you, this case is stronger. But Mr. Maestro, the MSG video, Madison Square Garden video that shows Mr. Oakley come in and sit down. And there are a lot of people stopping by and saying hello to him. There's a lot of activity around him. When he first walks in, he meets someone there who obviously seems to be like an acquaintance or something. And actually, when Mr. Oakley ultimately leaves, he starts to lose his watch. And he reaches out to that fellow because his watch is coming off. And I think almost to see if that fellow will hold on to his watch for him or something. So there's some connection between that guy. But there's activity around him. And then all of a sudden, also people show up. And it's unclear, and activity starts, and physical activity starts. Which, no, just hang, hang, just calm down for a second. I'm with you. I've known you a long time. So, and Mr. Wiggler says, well, that video shows a contact, a battery, and he identifies that. And he says, Judge Sullivan made a mistake because he didn't confront that piece of evidence. And you're very careful to parse and say, that's not what he claims is a battery. But isn't, wouldn't a deposition of Mr. Oakley juxtaposed to the video? Be more meaningful in tying down what he meant by what he said in his affidavit and or his representation of the complaint. I mean, you're very careful to parse his assertion of a battery as occurring. What shows up on the fan video, right? I mean, that's ridiculous. It shows up on the security footage too, right? It shows up on the security footage too, Your Honor. But what if he were to say, I mean, this is a complaint, an amended complaint without any discovery or explanation of it. And the complaint is legally sufficient to make out a claim of assault and battery. But the question is, will that sufficiency stand up once it's tested against a deposition? What if Mr. Oakley said, no, I'm looking at the MSD. No, that's not when it occurred. Here's when it occurred. He shows the fan video. Then perhaps maybe a district court judge is better served by identifying, looking at that video and saying, that video doesn't show an assault to Mr. Barkley. In fact, it shows Mr. Barkley behaving rather badly. So, Your Honor, actually the allegation of a battery and the video starts before the watch is coming off. Your Honor, I agree with you, I agree with you, that's the case. Yes, and the video clearly shows from the moment he's up out of his seat and refusing to leave, turning back towards his seat, he is approached. And he is the one who, as Your Honor pointed out, before anything happens with the watch, he chops down on the hand, he hits in the forehead, and he pushes twice a security guard with an NYPD officer right there. There's no coordination in time between the stadium video and the fan video to know exactly what they're watching. I just had a case a few weeks ago where there were store videos, and they were actually on clocks, and so they were coordinated, but there's no coordination here between the clocks. And so it's hard to say that in time, the scenes are the exact same scenes being depicted. Isn't that the case? As Judge Sullivan pointed out in his opinion, at the moment at which the security guards first approach Mr. Oakley and the fan video, the YouTube video, a mere 18 seconds elapsed from the start of the one to the start of the other. So, Your Honor, at that point, Mr. Oakley has risen with the security guards, and you see every moment. You don't hear the first request when he leaves, but he doesn't deny it with a- Counsel! Sorry, Your Honor, sorry. Would you please stop repeating what we know occurred in the second video? We know it, we know what Mr. Oakley did then, and we know that that was violent. We don't need you to keep repeating that. That's not the question before us. The question before, if a question is what you just are focusing on, we're all with you. But that's not the question, so please stop telling us. Your Honor, I was trying to answer Judge Wesley's question. He wanted to know whether the videos overlapped. And yes or no. They overlap except for 18 seconds when Mr. Oakley has admitted, in response to the motion for summary judgment, that he was approached, asked to leave, and refused to leave. Okay. Can I, this description of his approach is that to leave, he refused to leave. If this case had proceeded in the more typical course, we'd have a deposition testimony, or affidavits even, sort of detailing, well we cannot do this. Deposition testimony with the opportunity for cross-examination, describing from the perspective of the various people who were there, this is what I said to him when, this is what happened then, and I'm just trying to figure out how much of this. We're essentially becoming the jury by inferring what was said when, as it correlating with what we see in the video. And that's not something we, the stadium video doesn't have audio, right? It does not have audio. And the fan video, the one, I guess I'm thinking exhibit four, the one that's sort of from a distance. You can sort of hear kerfuffle, but until he gets on the ground right there, it's not. It's just exhibit three that's got the audio. Is that what you're relying on? Exhibit three has the audio, and exhibit four has some audio. And so for exhibit three, that's the one that starts 18 seconds after the initial confrontation. So we don't have any audio of the first 18 seconds of that interaction. Am I right about that? You don't have any audio for the first 18 seconds? I can't hear you. I'm sorry, you don't have audio for the first 18 seconds? But your honors, there's no dispute that he was asked to leave, and that he declined to leave, turned to return to his seat. And that's when he was approached. New York law says that once he has been directed to leave, that's a lawful directive, he is a trespasser, and such force as is necessary to remove him is permitted. The Second Circuit did give us instructions on this case. It said the case is remanded for the limited purpose of determining whether, quote, the security guards used excessive force in accomplishing Oakley's removal. An exact quote. I respectfully suggest to you, just as Scott V. Harris dictates, and just as in the McKinney case that Judge Wesley was on, and so many of you have participated in the past in cases where video evidence was, in fact, conclusive. A single video. Here you have multiple videos depicting the relevant events. And I simply point out to your honors that that 18 seconds is not the subject of these claims in the amended complaint. That 18 seconds he has admitted on summary judgment are when he was asked to leave and returned, at that point MSG had the right to use whatever force necessary to remove a trespasser. No, a reasonable force, right? Reasonable force, yes, yes. Whatever force necessary, you could imagine. I meant, your honor, the force necessary to accomplish a removal. The standard here is on Oakley to prove that whether the force used to remove was objectively unreasonable. Scott V. Harris tells you that when you have video from multiple angles that is conclusive on these points, that a court should decide the question of the reasonableness of the force. That that issue, according to Scott V. Harris, becomes a legal issue. It's not his testimony, because what Scott V. Harris tells us, and so many other cases tell us, is that the self-serving testimony of a plaintiff directly contradicted by video is not to be credited. In fact, this court in Pratt in 2017 said, quote, objective video evidence is sufficient to overcome. You can, I think, unless my colleagues have more questions, I think you can wrap it up. Thank you. All right, thank you, your honor. Appreciate it. Your honors, there are not multiple videos in this case that show all of the facts. Could you first address the question of whether the complaint speaks to an assaulted battery previously? Because if it really didn't, then maybe the district court was correctly not looking at that. So could you address that? It does, your honor, to Judge Robinson's point. Most of these cases that we litigate as plaintiff's lawyers, we end up amending cases as discovery goes on, as the facts are brought out. But the original complaint under a rule eight standard certainly alleges an assault and battery. And it's important also to note that when we filed our amended complaint in this case, we did so prior to defendant's motion to dismiss. We did that because the district court was threatening to sanction us if we waited until after the motion to dismiss, which we have as a matter of right under rule 15. So we made our amended complaint, they then moved to dismiss. And for the very first time, we came into possession of the stadium video. And that's the stadium video that shows, again, the 15 or 16 seconds that doesn't appear on any other video. The fan video, to your question, comes after the initial assault and battery. Well, the fan video, I mean, with all due respect, the fan video shows no one pushed him when he first fell. There's no one pushing him at the time that he falls the first time. And when he's going down the stairs, he kind of falls to the side. I mean, he doesn't- Well, I mean, I guess I'm not supposed to ask Second Circuit questions, but then why does Charles Oakley fall twice in the period of one minute? An NBA All-Star, there has to be a reason for him to fall, and there has to be a reason for him to- I mean, an All-Star doesn't mean that, with all due respect. I think it is beyond credibility, frankly, to suggest that Charles Oakley would fall twice in the period of a minute, unless there was something that actually happened. That is not- He's not being pulled along, that's for certain. Well, maybe the pull or the push caused him to trip or lose his footing. The problem, to answer your- So you're saying the fall is indicative of the unreasonableness of the force? Partly, yes. And to answer your question on Scott versus Harrison, what would be the appropriate standard to use going- And seeing why he fell, if he fell or if he was pushed. I think that could certainly help the situation. Eyewitnesses- I fell for my knowledge. That is true, but I also, I do believe that the first encounter, the 816 to 830, also even though the video is grainy, show that he wasn't given a reasonable period of time. And nowhere does he say that he refused to leave. I would point you to paragraph 11, I think that's what your honor, Judge Robinson was reading, paragraph 11 of his affidavit in opposition to the summary judgment motion. Mr. Oakley said that immediately after I stood up, the security guard who had initially approached me, pushed me away from him, I was then grabbed by defendant security personnel without provocation and pulled backward. And that's what precipitated these events, but if a video is blatantly, is truly blatantly contradicted, blatantly contradicts one's testimony, then yes, that evidence should trump the person's testimony. I get that, I understand that. But at the same token, the district court should not draw inferences in favor of the moving party. And the court, if you read the opinion that the district court did. So that's the standard, I asked your, well, the amici to give me a standard. So it's when the video requires an inferential leap as to causation, as opposed to, you used the term blatantly. Contradicts, that's the wording of the Supreme Court. So, I mean, the Supreme Court has said if the video blatantly contradicts the testimony of the non-moving, so that no rational trier of fact can conclude anything other than that person is essentially a liar. But that's not the case here. The district court went to great efforts in its opinion to characterize testimony. It said things like open hand, lightly touches, he was guided at a reasonable pace, no intentional pushing. How do you come to the conclusion it's not intentional unless you're trying to read somebody's mind? The attempt- Mindful that we've had a fair amount of time on this, if my colleagues don't have any further questions, I think we should wrap it up, thank you. I would ask, Mr. Oakley has been waiting six years to have his day in court in this case. We have not had an answer, we have not had discovery. And I respectfully request that this court overturn the district court's opinion and grant our motion to amend so that we can proceed. Thank you very much. Thank you both. Appreciate all of you, thank you. Thank you both. Thank you all.